No. 27,439.

RUFUS M. OVERLANDER, *Plaintiff,* v. CHARLES L. OVERLANDER, *Appellant;* THE FEDERAL TRUST COMPANY, Interpleader, et al., *Appellees.*

(265 Pac. 46.)

SYLLABUS BY THE COURT.

1. MORTGAGES—*Recording—Unrecorded Mortgage is Superior to Subsequent Attachment Lien.* Where a debtor gave a mortgage on his interest in land in Kansas to one of his creditors on July 13, 1922, which was not recorded until April 11, 1923, and another creditor levied an attachment on the same land March 21, 1923, the lien of the mortgage is prior to that of the attachment creditor because the attachment reached and bound only the interest of the defendant in the property at the time it was served, regardless of whether the mortgage was recorded or not.

2. LIS PENDENS—*Effect of Dismissal of Action.* Where an attachment is levied upon land and the action is prosecuted to judgment on publication service, and attachment confirmed, and later upon motion of the attorneys for plaintiff, because the judgment was "wholly void," the judgment was set aside by the court as void and the cause dismissed, the doctrine of *lis pendens* will not apply to anyone acquiring an interest in such property after the levy of the attachment.

3. CORPORATIONS—*Foreign Corporations—Privileges as Mortgagees.* The usual rights and privileges belonging to mortgagees with reference to merger of

Appeal and Error, 4 C. J. p. 1130 n. 61. Corporations, 14a C. J. p. 1322 n. 1. Judgments, 34 C. J. p. 1105 n. 95. Lis Pendens, 38 C. J. pp. 13 n. 90, 40 n. 49; 10 L. R. A. n. s. 446; 17 R. C. L. 1040. Mortgages, 41 C. J. p. 522 n. 65; L. R. A. 1918A 1089.

notes into judgments and subsequent use of such judgments and deficiency judgments are held to be accorded to foreign corporations as mortgagees within the ordinary interpretation of R. S. 17-507.

4. MORTGAGES—*Foreclosure in Another State—Effect of Deficiency Judgment in this State.* Where a trust company holding a mortgage which covers land in Nebraska and Kansas forecloses the mortgage in Nebraska with personal service of summons on the defendant, obtains a personal judgment against him, sells the Nebraska land, applies the proceeds toward reducing the judgment, and then procures a deficiency judgment from the Nebraska court, such deficiency judgment, duly authenticated, can be made the proper basis for enforcing the lien of the mortgage on the Kansas land in lieu of the note merged into such judgment. (*Houdek v. Brick,* 124 Kan. 77, 257 Pac. 753.)

5. SAME—*Generally.* Other assignments of error considered and held not such as to justify a reversal or modification of the judgment of the trial court.

Appeal from Doniphan district court; C. W. RYAN, judge. Opinion filed March 10, 1928. Affirmed.

*R. L. Douglas,* of St. Joseph, Mo., and *Jacob A. Overlander,* of New York, N. Y., for the appellant.

*C. W. Reeder,* of Troy, and *John J. Ledwith,* of Lincoln, Neb., for appellee Federal Trust Company.

The opinion of the court was delivered by

HUTCHISON, J.: This is a partition suit commenced in Doniphan county to divide the land in that county inherited by five brothers, in which case there has been injected by attachment and by interplea of a mortgagee a controversy as to priority of liens on the undivided interest of one of these brothers. The decision was in favor of the mortgagee, and the attachment creditor appeals.

Among the questions raised are that of priority between an unrecorded mortgage and an attachment creditor. Does a suit in which judgment is rendered and later set aside and suit dismissed constitute a *lis pendens* so as to affect an interest acquired during its pendency? Has a foreign corporation holding a mortgage on Nebraska and Kansas land a right to foreclose the mortgage or enforce the lien thereof in this state without being regularly admitted under the Kansas laws to transact business in this state, and particularly after foreclosing the same mortgage on the Nebraska land? Is an authenticated copy of a deficiency judgment rendered in Nebraska in a mortgage-foreclosure case where the mortgage covered land in Nebraska and Kansas a sufficient basis for the enforcement of the mortgage

lien on the Kansas land included in the mortgage, such judgment being a merger of the note reduced by credits in Nebraska?

Five Overlander brothers were the owners by inheritance of a tract of land in Doniphan county in April, 1922, each owning an undivided one-fifth interest therein. Jesse, one of the five, lived in Nebraska and was indebted to his brother Charles and to the Federal Trust Company, of Lincoln, Neb. April 27, 1922, Rufus M., one of the brothers, commenced this suit to partition the land between the five brothers, making the other four parties defendant. June 26, 1922, Charles commenced an attachment action in Doniphan county against his brother Jesse on several notes given by Jesse to Charles, and attached the undivided one-fifth interest in the Doniphan county land being partitioned. Judgment was rendered in this attachment suit in favor of Charles and against Jesse November 1, 1922, based on publication service. On July 13, 1922, Jesse, in order to secure the Federal Trust Company on his indebtedness to it, executed two notes, one for $4,500 and the other for $1,794, and gave the trust company two mortgages, one being a first mortgage securing the $4,500 note and the other a second mortgage securing the $1,794 note, both describing land in Nebraska and the Doniphan county land, and the second mortgage reciting that it was subject to the $4,500 mortgage. The first mortgage was filed for record in Doniphan county July 27, 1922, and the second mortgage was not filed in Kansas until April 11, 1923. Judgment was rendered in the partition suit February 28, 1923, but instead of dividing the land, it was ordered sold and the proceeds were divided. The sale was not confirmed and the proceeds divided until June 26, 1924, at which time, on account of the mortgage lien and the attachment suit, the proceeds of the one-fifth belonging to Jesse were paid to the clerk of the district court to await the determination of this litigation. On March 21, 1923, the attorneys for plaintiff in the attachment suit filed two motions, one to set aside the judgment obtained therein on November 1, 1922, because it was "wholly void," and the other to dismiss that cause of action without prejudice. The court on March 21, 1923, set aside the judgment because it was void, and then dismissed the action without prejudice. On the same day, viz., March 21, 1923, Charles commenced a new attachment action against Jesse substantially like the former. Judgment was rendered in favor of the plaintiff in this attachment suit October 16, 1923, giving a lien on the one-fifth interest of Jesse in the Doniphan county land; but judg-

ment was stayed on account of other litigation pending. Because of the failure of Jesse to pay interest on his notes to the trust company secured by mortgages, a foreclosure proceeding was commenced in Lancaster county, Nebraska, on both mortgages April 14, 1923. Judgment was rendered in that foreclosure action November 6, 1923, the land was sold September 23, 1924, and a deficiency judgment was rendered January 26, 1925, for $3,139.84 with interest. On March 3, 1925, the trust company filed its interplea in this partition suit, based on an authenticated copy of its deficiency judgment, and asked to enforce its mortgage lien on the one-fifth interest of Jesse in the land, or in lieu thereof the proceeds thereof in the hands of the clerk. Issues were joined between the trust company and Charles, the attachment creditor, as to priority of liens, and, as above stated, the decision was in favor of the trust company.

Appellant claims that because his second attachment suit was commenced on March 21, 1923, and the second mortgage was recorded in Doniphan county April 11, 1923, his attachment lien is necessarily prior to any possible lien of such mortgage unrecorded when his lien attached. Our recording statutes are only for the purpose of imparting notice to subsequent purchasers and mortgagees and not to attachment or judgment creditors. It would make no difference in this case between an attachment creditor and a mortgagee if the mortgage had never been recorded.

"An attachment creditor acquires no greater right in the property seized than the defendant in the attachment owned. . . . The attachment bound the interest of the defendant only, whether that interest was shown by the record or not. The attaching creditor is not a purchaser for value buying upon the strength of a record title." (*Julian v. Oil Co.*, 83 Kan. 440, 111 Pac. 445.)

The mortgage was given on this land by Jesse July 13, 1922, and any attachment levy made after that date only reached the interest he had left in the land, regardless of the mortgage being recorded or not.

"One purchasing real property sold under attachment proceedings is not a *bona fide* purchaser for value, but takes only the interest of the defendant in attachment in the property at the time it was seized." (*Markley v. Investment Co.*, 67 Kan. 535, syl., 73 Pac. 96.)

"The lien of a mortgage executed before the levying of an order of attachment, but not recorded until afterward, is prior to the lien of the attachment, although the attaching creditor may not at the time of levying of his attachment have had any notice of the mortgage.

"A mortgage duly executed, but not recorded, is not void; it is valid as between the parties thereto, and as to all others who have actual notice

thereof; and by such a mortgage a valid interest in the mortgaged property, a valid lien thereon, passes from the mortgagor to the mortgagee, although the records may not show it; and an attaching creditor of the mortgagor can attach only the *real interest* of the mortgagor, and cannot attach the interest in the mortgaged property which has already passed from the mortgagor to the mortgagee." (*N. W. Forwarding Co. v. Mahaffey, Slutz & Co.*, 36 Kan. 152, syl. ¶¶ 1, 2, 12 Pac. 705.)

Appellant complains of the placing of the credits from the sale of the Nebraska property toward the payment of the second mortgage note instead of the first, but the decisions above cited showing an unrecorded mortgage to have the same standing as a recorded one when compared with the lien of an attachment creditor wholly dispose of that claim.

Appellant devotes many pages of his brief to uphold his first lien, thought to have been obtained by his first attachment suit, and argues at great length and with many citations that the doctrine of *lis pendens* applies to anyone obtaining any interest in the attached property after the levy of the attachment. This argument, however reasonable and plausible, entirely fails when it is shown that such attachment levy, lien and judgment were on motion of his own attorneys set aside by the court as void and the suit itself dismissed. Some explanations are made as to the way it happened to be done and the reasons for so doing, but we are here to consider what was done and what now remains. It is urged that whatever might have ultimately been done with this first suit it was *lis pendens* to the trust company when it took its mortgage while this first action was still pending.

"If an action is dismissed, either voluntarily or involuntarily, under such circumstances as not to preclude another action, but without any reservation of the right to bring a new action, a person acquiring interests in the subject matter of the litigation, before the commencement of the second action, is not bound thereby." (38 C. J. 40.)

"When an action is commenced by filing a petition and an affidavit for attachment, and a summons is issued, and an order of attachment is obtained and levied upon land, but no service of the summons is had within 60 days from the filing of the petition, the attachment falls, and the land so attached may be conveyed free from any lien on account of such attachment." (*Kincaid v. Frog*, 49 Kan. 766, syl. ¶ 2, 31 Pac. 704.)

The serious trouble with this first action, as readily recognized by the court and attorneys, was in the failure to file an affidavit for publication service, as required by law. It simply alleged the de-

Overlander v. Overlander.

fendant was a nonresident and actual service could not be had upon him in the state.

"Before service can be made by publication, an affidavit must be filed stating that the plaintiff is unable to make service of the summons upon the defendant, and that the case is one of those mentioned in § 72 of the civil code. Without such an affidavit, the attempted service by publication is insufficient." (*Grouch v. Martin,* 47 Kan. 313, syl., 27 Pac. 985.)

This judgment being denominated as void both by the attorneys procuring it and the court, it could be set aside any time, and in fact never had any merit or virtue as a judgment or lien and could not constitute a *lis pendens* to anyone.

Appellant says this is a collateral attack by the trust company on this first attachment suit and judgment. That cannot be correct, because there is no first suit or judgment extant to be attacked collaterally or otherwise. The real fact is the appellant is by his argument seeking to reinstate such suit and judgment. Until it is in some way reinstated or restored, if such were possible, there is nothing concerning it here for us to consider.

It is urged that appellee, being a foreign corporation, has no right to foreclose a mortgage in this state without being regularly admitted under the corporate law to do business herein, and particularly to foreclose a mortgage or enforce a lien to satisfy a deficiency judgment from another state. The language of R. S. 17-507 is sufficient, we think to determine that right, and that it will extend to a deficiency judgment which is a merger of the unpaid part of the original note.

"That foreign corporations shall have the right to receive, take, purchase, and hold, by mortgage or otherwise, any securities and liens executed, given or transferred or so intended to represent or secure loans upon or purchase-money of lands or other property situated or being in this state, and to sell, assign, transfer, and to sue upon, foreclose or otherwise enforce the same." (R. S. 17-507.)

". . . A foreign corporation holding a mortgage on real or personal property in this state may maintain an action to enforce the same without being authorized to engage in business within the state." (*Stewart v. Falkenberg,* 82 Kan. 576, syl. ¶ 4, 109 Pac. 170.)

Appellant contends that because judgment was rendered on the notes held by the trust company in Nebraska and the judgment was partially satisfied from security in that state the courts of Nebraska were limited in their powers as affecting anything that had to do with Kansas property; in other words, if the note was merged into a

judgment there it cannot be certified to Kansas as a basis for enforcing a lien on Kansas property, and especially when the Nebraska courts have further changed the judgment by reducing it and certifying only a deficiency judgment. If we understand this contention, it is not supported by the Kansas authorities.

"When the note is reduced to judgment it becomes merged in the judgment and cannot thereafter be made the foundation of a subsequent cause of action, but the merger and extinguishment of the note does not discharge the debt nor extinguish the lien.

"After the merger the judgment is the evidence of the debt secured by the mortgage, and a proceeding to foreclose the mortgage should be founded on the judgment rather than on the original note." (*Rossiter v. Merriman,* 80 Kan. 739, syl. ¶¶ 2, 3, 104 Pac. 858.)

"Where a debt which is evidenced by promissory notes is reduced to judgment the creditor has the same right to take possession of property pledged to secure the payment of such indebtedness that he had before the change in its form." (*Osborne v. Connor,* 4 Kan. App. 609, syl. ¶ 2.)

The decision in a very recent case (*Houdek v. Brick,* 124 Kan. 77, 257 Pac. 753) covers all these points raised by the appellant, differing only with reference to the kind of service had on the defendant. In that case the service in the foreclosure suit in Nebraska was by publication, and later, when enforcing the lien on the Kansas land, the service was personal. The court held that because the Nebraska service was not personal there was no deficiency judgment as a basis to enforce the lien in Kansas, but that the note, not being merged into a judgment, would be the proper basis with credits indorsed for enforcing the lien in Kansas. In the case at bar personal service of summons was had on the defendant in Nebraska and he entered his appearance in the second part of it in Kansas.

There are sixteen special points raised and grounds urged by the appellant in his brief why the lien of the attachment creditor should be prior and superior to that of the mortgagee. We have examined and considered all of them and have discussed the most important of them and have reached the conclusion that they are not well taken. We agree with the trial court in holding that the mortgage lien, based on the merger of the notes into a deficiency judgment, can be properly enforced against the property in Kansas as a prior lien to that claimed by the appellant.

The judgment is affirmed.