No. 31,128.

Rufus M. Overlander, *Appellee*, v. Jacob Alpheus Overlander, *Appellant.*

(21 P. 2d 384.)

Opinion filed May 6, 1933.

*Jacob A. Overlander,* of New York City, N. Y., *pro se; Robert A. Brown* and *R. L. Douglas,* of St. Joseph, Mo., of counsel.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Margaret McGurnaghan* and *Ralph M. Hope,* all of Topeka, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action in accounting. A referee was appointed who made findings of fact and conclusions of law, on which the court rendered judgment for plaintiff for $717.48. Defendant has appealed.

This court has heretofore determined six cases (*Overlander v. Overlander,* 115 Kan. 478, 223 Pac. 304; id., 118 Kan. 340, 235 Pac. 93; id., 119 Kan. 348, 239 Pac. 751; id., 125 Kan. 386, 265 Pac. 46; id., 126 Kan. 429, 268 Pac. 828; id., 129 Kan. 709, 284 Pac. 614) involving controversies among the over-litigious sons of Rufus B. Overlander, deceased, respecting property left them by his will. The property so left consisted in part of a 200-acre farm in Doniphan county. Defendant, claiming to act for all the devisees, looked after the renting of this farm for several years. In this action, begun July 2, 1924, plaintiff alleged he had not received his share of the rents collected, or which should have been collected, by defendant for the years 1919 to 1923, inclusive (later 1919 was omitted and 1924 included), stating the amount due him was $2,370.98;

asked an accounting of the rents and of any sums defendant had expended for taxes or upkeep, and for judgment for the sum found due. Defendant's demurrer to this petition was overruled and he appealed (119 Kan. 348, 239 Pac. 751). Pending this, and on September 2, 1924, the defendant here, as plaintiff, brought an action against the plaintiff here, as defendant, in the supreme court of New York, in which state both parties reside, in which action plaintiff (defendant here) claimed: (a) $2,852.09 for rents and profits received and applied from the land in question, insurance and repairs on buildings, and improvements; (b) $273 as the share of the defendant (plaintiff here) as taxes paid on the land; (c) $48.90 on account of estate taxes paid; (d) $710.22 for commissions claimed to be due; and (e) $540 for services in work and labor on the farm. Issues were joined in that action. A referee was appointed, who found, with respect to (a) that there was no balance due from Rufus M. Overlander to Jacob A. Overlander because there was a balance remaining in Jacob A. Overlander's hand; (b) that Jacob A. Overlander had a cause of action against Rufus M. Overlander for taxes in the sum of $273, less $38.18 which had been paid, but the cause of action was *res judicata*, having been determined by the supreme court of Kansas; (c) that Jacob A. Overlander had a cause of action against Rufus M. Overlander for the ratable share of estate taxes assessed against their mother, but this cause of action was adjudicated in the supreme court of Kansas; (d) that Jacob A. Overlander was not entitled to commissions; (e) that the reasonable value of services, repairs and improvements was $400, and that Jacob A. Overlander was entitled to recover $88 from Rufus M. Overlander therefor, but there was a sufficient balance remaining in the hands of Jacob A. Overlander to reimburse him for this amount. The referee further found that this was not an action in accounting. These findings of the referee were adopted by the court August 28, 1928, and judgment for costs for $952.60, less $80, was entered in favor of Rufus M. Overlander against Jacob A. Overlander.

Pending the disposition of the New York case this action remained inactive in the district court of Doniphan county. Thereafter the defendant in this case filed an amended and supplemental answer and counterclaim in which he sought to recover from plaintiff, (a) $2,852.09 on account of repairs, insurance on buildings, and moneys expended on account of the land; (b) $273 as plaintiff's share of taxes paid on account of the land; (c) $48.90 on account for estate

taxes paid on account of plaintiff; (d) $710.22, being the reasonable value of defendant's services in receiving the proceeds from the farm and disbursing the same; (e) $540 for services rendered on · account of work and labor on the farm; (f) $279.06 because of plaintiff's failure to execute a lease.

To this amended answer and counterclaim plaintiff replied by setting up the adjudication in the New York case.

In November, 1929, defendant asked leave of court to file an amended answer and counterclaim, restating in different language much he had previously alleged, but adding thereto a claim of $210.55 for expenses, or damages, alleged to have been caused· by the fact that plaintiff, in July, 1919, had filed an unfounded claim for $500 against the estate of the father, Rufus B. Overlander, deceased. This request was denied. The referee found that defendant had received as rent from the lands in question, for the year 1920, $3,549.77; for 1921, $411.36; for 1922, $722.13; for 1923, $254.55; and for 1924, $1,129.09, making a total of $6,367.79, and that defendant also received and is chargeable with a note given for corn amounting, with interest, to $998.80; that plaintiff should be charged with $641.94 received from defendant on account of rents collected; that plaintiff had paid his share of the taxes for 1919 and 1920, but should be charged with his share of the taxes for the years since 1920; that plaintiff's share of such taxes for the remaining years is $273, less $38.18 paid, leaving $234.82; that defendant should be allowed credit for expenditures he made on the farm for certain items totaling $634.14. The referee allowed defendant no compensation for fourteen days' services claimed by him, for the reason that no agreement was shown to compensate defendant for such services, nor did he allow anything on account of estate taxes claimed to have been paid by defendant, for the reason that it was not clear from the testimony for whom or for whose benefit these taxes were paid. He allowed defendant nothing as a commission for services, for the reason the evidence failed to establish any' contract to pay therefor. The referee allowed nothing to defendant on his claim for damages for plaintiff failing to execute a lease. Summarizing, the referee found:

"The plaintiff is entitled to one-fifth of $7,357.59, which is the total of the rentals, to wit, $6,367.79, and the Withers note and interest, $989.80, to wit, $7,357.59.

"The plaintiff should have charged against this sum the following items, to wit:

One-fifth of $634.14, amount expended on farm by defendant...... $126.82
Taxes, $273, less $38.18......................................... 234.82
Amount received by plaintiff from defendant from rentals.......... 641.94

Total ...................................................... $1,003.58

Leaving a balance of $467.93, with interest at the rate of 6 per cent from May 23, 1924, due the plaintiff from the defendant."

Specific exceptions were made to these findings. A hearing was had thereon September 28, 1932. The court approved the findings of the referee, with the exception of a $2 item for which he gave defendant credit, and rendered judgment accordingly.

Appellant contends: First, that the court erred in refusing permission to file an amended answer setting up a claim for expenses incurred in defending an ill-founded claim of plaintiff against the estate of their father. We find no error in this. Ordinarily, expenses incurred in defending a claim or action which is not established do not in themselves form the basis of an action. No reason is pointed out to us why it should do so in this instance.

Second, that it was error not to allow defendant's claim against plaintiff for taxes paid for the years 1919 and 1920. The referee found plaintiff had paid his share of those taxes, and this was approved by the trial court. There is nothing in the record brought to us which overcomes that finding.

Third, that it was error not to charge plaintiff with one-fifth of certain estate taxes paid by defendant. The referee refused this on the ground that it "is not clear from the testimony for whom or for whose benefit these taxes were paid." The reason given is not sufficient. The evidence discloses that on the death of Rufus B. Overlander, father of the litigants here, the amount of the federal estate tax was determined. By his will he had given his wife $500 and the income for life, with remainder to his children, of certain property—not the 200 acres, the rents of which are in controversy here. When the amount of this federal estate tax was determined someone in the internal revenue department divided it into six parts, there being the widow and five children. The children each paid one part. The widow, not having money with which to do it, did not pay the sixth part. Eventually the appellant paid it. A one-fifth of that part amounts to $48.90. He asked that it be charged to the plaintiff in this accounting. That should have been done. The federal revenue act of 1918 (§ 409) made the tax a lien for ten years on the gross estate of the decedent. (*United States v. Cruik-*

*shank,* 48 F. 2d 352.) A similar provision is in the present act (U. S. C. A., Title 26, § 1115). Hence, the part of the estate tax unpaid by the children was a lien upon the land, the rents of which are in controversy here. It was as much the duty of the plaintiff as it was of the defendant to pay this. When defendant paid it he should have had credit for the amount on an accounting with plaintiff.

Fourth, that railroad fare in the sum of $793.70 should have been allowed as part of the expense of managing the farm, one-fifth to be charged to plaintiff. Appellant lived in New York and testified that he came to Kansas at least once, and sometimes as many as five times, a year. While he went to the farm each time and gave it some attention it seems he had other business, representing his father's estate in the probate court and attending to other litigation. Clearly, all of this should not have been taken into account. No effort was made by defendant to separate it or allocate it in any way to the various purposes of his trips. The referee in the trial court cannot be criticized for refusing an allowance on this item, since the burden of proof was on defendant to establish his claim in this respect.

Fifth, that there were losses on a farm lease by reason of the fact that plaintiff declined to join with the other heirs in its execution. We find no evidence in the record which would have justified an allowance on this item.

Sixth, that no allowance was made for work and labor on the farm. Defendant claimed to have worked fifty-four days, for which he asked $10 per day, amounting to $540. He made the same claim in the New York case and was allowed on the basis of $400 for this item, one-fifth of which was charged to the plaintiff here. He now claims there were fourteen days more for which he should have been allowed by the referee and the trial court in this case. This was denied on the ground that there was no evidence tending to show any agreement either to employ him or to pay him for his services. We are unable to find any such evidence in this record. More than that, we see no reason why appellant is not bound by the New York judgment with respect to this item.

Seventh, that he is charged with the Withers note with interest thereon. It is contended, first, that the amount of the note should not have been taken into account for the reason that this is not a suit on the note, and it is not mentioned in the pleadings. The point is not well taken. The note was given for corn grown on the farm,

and it is proper to take it into account as a part of the rents received. Second, it is contended there is error in computation. The note was given March 14, 1923, for the sum of $674.50. The referee computed interest on this note at the rate of seven per cent per annum from May 23, 1924, which was the date of striking a balance, to January 9, 1931, the date he made his report. This interest, as computed, amounted to $315.30. This was added to the face of the note, making the note, with interest, $989.80. This was added to the total cash received from rentals, $6,367.79, making a total of $7,337.59, of which plaintiff was entitled to one-fifth. From this was deducted the items charged against the plaintiff, leaving a balance due plaintiff of $467.93, as found by the referee as of the date of May 23, 1924; but to this balance is added interest at six per cent to the date of his report, January 9, 1931. It is clear that this method of computing the interest duplicates the interest on this note. We understand it to be plaintiff's contention that defendant had no authority to sell the proceeds of the farm for other than cash. No authority to take a note is shown by the evidence. Defendant should have been charged with this note as though he received cash for the corn sold. This would make the correct charge against plaintiff as follows: Total cash rentals received, $6,367.79, plus the face of the Withers note, treated as cash, $674.50, making a total of $7,042.29, of which plaintiff should have received one-fifth, amounting to $1,408.46. From this should be deducted the amount properly chargeable to plaintiff, as follows: Total found by the referee, $1,003.58, plus $2 added by the court, plus $48.90, being the portion of the estate tax paid by defendant properly chargeable to plaintiff, making a total of $1,054.48. This leaves a balance due plaintiff of $353.98 as of the date of May 23, 1924, to which sum should be added interest at the rate of six per cent per annum to the date of the judgment, which was finally rendered in this case September 28, 1932, making the amount $531.27. With respect to this error of computation appellee says that the same method was used by the referee in this case that is used in the accounting case of *Overlander v. Overlander*, 126 Kan. 429, 268 Pac. 828. We have reëxamined the abstracts in that case and find that the same method was used, but we also find that defendant did not contend in the trial court that there had been an error in the computation. His motion to correct and set aside the findings of the referee did not raise that question. He did raise it in his brief in this court, but of

course that was too late; hence the court found that the mistake in computation was not available.

Appellant complains of the referee's fee of $250 allowed by the trial court. Naturally, it was a matter which rested in the sound discretion of the court. Considering the nature of the litigation, the contention over numerous items, some of which had been formerly litigated and others of which had no substantial merit, we are unable to say that the fee was excessive. There is a further complaint as to the computation of interest on certain items. So far as these have any merit they have been disposed of heretofore in this opinion.

In harmony with what has been said the judgment of the court should be modified and reduced to $531.27 as of the date of September 28, 1932, and, as so modified, affirmed. It is so ordered.