The opinion of the court was delivered by
Brewer, J.:
*471 ’prematurely begun. a. involuntary ettectof. *470 This was an action against the surety in an attachment bond, to recover damages for the wrongful suing out of the attachment. The facts in the case as disclosed by the record are as follows: On the 18th day of June, 1879, one S. J. Bever commenced an action in the district court of Greenwood county against W. S. Reece, the plaintiff in this action, upon a promissory note. In such action he sued out an order of attachment and caused it to be levied upon certain personal property and real estate of the defendant. The undertaking in attachment was signed by Kerr as surety. The affidavit alleged as ground for issuing an attachment, that the defendant had absconded with intent to defraud his creditors. After the levy of the order of attachment, the personal property was sold by order of the district judge as perishable property, and the proceeds held to abide the result of the action. On May 19, 1880, judgment was taken by default, the proceeds of the sale of personal property were ordered to be applied to the satisfaction of the judgment, and also a writ was ordered for the sale of the realty to satisfy the balance. On the 17th day of July, 1880, the judgment was set aside upon motion of the defendant, and on the 13th day of September, 1880, the attachment was also set aside on motion of the defendant, the court finding that at the time of the commencement of the action the defendant had not absconded with intent to defraud his creditors, and that he did not conceal himself so that summons could not be served upon him. On the first day of July, 1880, and while the order of sale was in the hands of the sheriff, and before moving to set aside the judgment, the defendant went to the clerk of the district court and paid to him the balance of the judgment in full. The plaintiff in this action claimed that he had been damaged by the proceedings under this wrongful attachment in the sum *471 ■of $2,927.55, for which he asked judgment. The defendant in his answer alleged that “The aggregate loss sustained by plaintiff by reason of said order of attachment, including value of property, money paid out for expenses and attorneys’ fees, was $1,000, and no more.” The case was tried before the court without a jury, and judgment rendered for ‘$1,000. As this amount was the sum admitted by the answer to be the loss of plaintiff, the only question in the case is, whether the plaintiff was entitled to recover at all; and nearly every question which can arise as to his right of recovery has been settled by prior rulings of this court. It has been held that the attachment is but an auxiliary proceeding, and that the action may go on to judgment whether the attachment stand or fall, (Boston v. Wright, 3 Kas. 227;) and as a result of this, that an action for a wrongful attachment does not depend upon the question whether the claim sued on in the attachment case was valid or not, and therefore that it may be maintained, whether iuderment has or has not been entered in such J ° action. (McLaughlin v. Davis, 14 Kas. 169.) It has also been decided that where the ruling of the trial court upon a motion to dissolve an attachment is rested alone upon the truth or falsity of the grounds stated in the affidavit for the attachment ruling, such ruling, until reversed by proper proceedings in error, is conclusive. (Hoge v. Norton, 22 Kas. 374.) And again, that a payment of a judgment made to a sheriff with an execution in his hands to enforce payment, is an involuntary payment, and does not preclude the defendant from thereafter ehallenging in proper proceedings the validity of the judgment. (Auld v. Kimberlin, 7 Kas. 601.) Now, applying these rulings to the case at bar, and it is shown that upon motion the district court dissolved the attachment on the .ground that the reasons stated in the affidavit therefor were untrue, and that thérefore the attachment was wrongfully issued. This decision unreversed is conclusive on that question, and gives to the defendant in the attachment proceed *472 ings a right of action against the plaintiff and surety on the attachment bond, though the defendant in the attachment suit, after the entry of judgment therein and after the money in the hands of the sheriff arising from the sale of the personal property had been applied in satisfaction thereof, paid the balance apparently due upon such judgment; yet such payment, having been made while an order of sale of his real-estate was in the hands of the sheriff, was an involuntary pay- • ment, and did not preclude him from thereafter challenging the validity of the judgment. The fact that this payment was made to the clerk and not to the sheriff, does not make it any the less an involuntary payment. He could make this challenge either by proceedings in error in this court, or by motion in the district court, as the circumstances of the case should require. He proceeded in the district court and there had the judgment vacated and set aside, the court finding that he had a valid defense to such action. He also filed his motion and obtained a ruling of the district court, setting aside the attachment as wrongful. Counsel-place much stress on the fact that Reece paid the balance of the judgment before commencing any proceedings to have it set aside. They say:
“Now we do not contend that the judgment, before and up to the time of payment of said judgment by said Reece, was valid, for the want of proper service upon him, but do insist upon our position that any voluntary appearance before judgment would be equivalent to a service, or the voluntary payment of a judgment after its rendition, without protest, would have the effect to cure the want of service before judgment. If this position is correct, then what effect would' this have upon the attachment proceedings in said action? It seems to us that the attachment proceedings were immerged in the judgment, and a part of it, and that a payment of the judgment extinguished the judgment and the attachment proceedings therein.”
It is unnecessary to inquire what might be the effect of this payment if it had been a voluntary payment, if it had' been made without process in the hands of the officer; because, as the record here shows, the payment, though perhaps-made without formal protest, was made while an order of *473 sale was in the hands of the officer for execution. In such* case, as we have already decided, 7 Kas., supra, the payment is an involuntary one; it is not an admission of the validity of the proceedings, and does not work any estoppel against the defendant. It would be a harsh rule if the defendant were precluded, by the payment of the judgment under such, circumstances, from thereafter questioning either the judgment or the attachment proceedings. Suppose that he owed this debt and was willing to pay it: why should he be precluded by the fact of paying it, from challenging the wrong that has been done to him by taking advantage of a temporary absence, and placing upon the records of the court a false-charge of dishonesty and wrongful conduct against him, and then sacrificing at forced sale a large amount of his property?' It is equitable as well as legal, that, having paid only when process was in the hands of an officer to compel payment, he-should not be precluded thereby from righting the wrong that has been perpetrated upon him.
„ . . . , bom”*™ defense' Another matter counsel refer to: They sought to show that after the entry of the judgment against Reece and the payment by him of the balance to the clerk, and before any proceedings commenced to set the attachment and judgment aside, the surety had in his possession money and property belonging to Bever, the-principal in the action, and that having no notice or expectation of any proceedings on the part of Reece to challenge the-regularity of what had been done, he surrendered such money and property to Bever or upon his order. We cannot see-that this, if true, would make any difference. If the attachment was wrongful, Reece had a right to. proceed against plaintiff or his surety at any time within the period of the-statute of limitations; and he lost no right of action against, the surety by a failure to notify him that he intended to bring such action.
*474 4‘ p|ope™yy *473 Counsel also sought to show that at the time of the motion to vacate the judgment and that to set aside the attachment,. Bever, the plaintiff, was not present, and had no actual knowl *474 edge of such motions, and that the attorneys who did appear ■on the hearing of such motions, and did receive the notices thereof, were not authorized to act in that behalf for him. But they were.the attorneys who appeared for Bever at the time of the judgment, to wit, May 19,1880. They appeared at the time of the hearing of the motions, and acted for Bever without suggesting any want of authority to so appear; and we do not think that the court committed any error in refusing to permit the surety to show that they had in fact no authority from Bever. The last of those motions was heard in September, 1880, and this case was tried the 14th day of May, 1881; and if Bever had not repudiated the action of the counsel who ■appeared for him during all these months, it scarcely lies in the mouth of the surety at this late date to be raising any ■objection on account of any supposed want of authority. Indeed, could the surety raise such a question in this collateral action at any time?
These are the only questions in the case, and in them appearing no error, the judgment of the district court will be affirmed.
All the Justices concurring.