No. 36,596

H. J. SMITH, *Appellee*, v. EDITH WARD et al, *Appellees*,
O. RENN, *Appellant*.

(169 P. 2d 93)

Opinion filed May
4, 1946.

*W. L. Cunningham* and *George Templar,* both of Arkansas City, argued the cause, and *Earle N. Wright,* of Arkansas City, was on the briefs for the appellant; *Kenneth W. Glines,* of Fredonia, N. Y., of counsel.

No appearance was made for the appellees.

The opinion of the court was delivered by

PARKER, J.: This appeal involves the right of an attorney to collect money belonging to his clients as a result of a partition proceeding.

In order to comprehend the nature of the controversy it will be necessary to briefly relate the conditions and circumstances responsible for its existence.

Back in January, 1944, John H. Silsby, a resident of Coffey county, Kansas, died intestate leaving a large estate consisting of both real and personal property. He left no wife, children or parents. In due time proceedings were instituted for the administration of his estate. The state of Kansas intervened in that proceeding, claiming the deceased left no heirs at law and that his property had escheated to the state.

Sometime after Mr. Silsby's death, O. Renn, a member of the bar of this state, and Kenneth W. Glines, an attorney of Fredonia,

N. Y., entered into a written contract of employment with 127 persons who claimed to be heirs at law of such decedent and who lived in various places throughout the United States and Canada under the terms of which they were to endeavor to establish the status of such individuals as heirs and in return receive as a fee for their services one-half of whatever they were able to recover for them out of such decedent's estate.

In the probate court 141 persons, including the 127 clients of Renn and Glines, were found to be legal heirs of Silsby, their interests ranging all the way from a $\frac{1}{12}$ to a $\frac{1}{2592}$ distributive share. The personal property was converted into cash and on final distribution Renn, as their attorney, collected the total amount due his clients. He then deducted the agreed fee, and remitted to each such client the amounts to which that individual was entitled.

Subsequently, a partition proceeding was instituted in the district court of Coffey county by H. J. Smith, one of the heirs, for the purpose of making disposition of the real estate decreed by the probate court to belong to such heirs in the proportionate shares set forth in its order of final settlement. Renn, as attorney, filed answer on behalf of the 127 persons who had theretofore employed him and represented them throughout the entire proceeding. Judgment was rendered by the district court decreeing the real estate was subject to partition and eventually it was sold at public sale, the sale confirmed, and the proceeds realized therefrom paid to the clerk of the district court by the sheriff.

On the 17th day of January, 1946, after allowance of fees to attorneys representing all parties, except Renn, who had announced in open court he was not asking for and was not entitled to an attorney fee for the reason that he and Glines had a contract with their clients on a contingency basis, the district court found the amount on hand, after payment of costs, ought to be distributed to the 141 parties to the action according to their respective interests and fixed the sum to which each was entitled. The order of distribution with respect to payment of such amounts reads:

"It Is, Therefore, by the Court Considered, Ordered, Adjudged and Decreed that each of the following persons shall be paid the amount opposite their names, as follows, to-wit: (here follow names of respective parties and the amount to which each was entitled)."

The same day Renn received from the clerk of the court one check, payable to his order, for the entire amount due the 127 clients repre-

sented by him and as attorney of record he receipted and satisfied the judgment docket. Later he cashed the check, deducted his fee, and remitted his clients for the sum each was entitled to receive under the existing contract. Thereafter, and on the 6th day of February, 1946, at a time when all but 3 of the 127 clients had received payment of the amounts due them in accordance with the terms of such contract, the court ordered Renn to return to the clerk within ten days the entire amount which had been received and collected by him from that official, stating his reasons for the issuance of such order were: (1) The 127 interested parties had not been paid their distributive shares of the proceeds from the sale of real estate as set out in the order of distribution, (2) the act of the clerk in paying Renn the entire amount belonging to the 127 parties was not in compliance with the order of distribution, (3) under the order of distribution it was the court's duty to see to it that each of such parties was personally paid his full distributive share of the proceeds for the sale of real estate as set forth in the order, and (4) it was the duty of the court to safeguard the integrity of the bench and bar and the clerk of the court from any attack or criticism which might result from an examination of the clerk's records in the involved proceeding. In addition the clerk was directed to issue checks to the individual parties for the amount owing to each as set out in the order of distribution.

Within a few days Renn appealed from the order as made by the trial court. All interested parties, and in addition the clerk of the court, were duly served with notice of appeal. Since Renn's clients were nonresidents of the state service was had on each of them by placing a true copy of the notice in an envelope, properly stamped and addressed to each person at his or her place of residence, and by then depositing such envelope in the United States post office at Arkansas City, Kan., on the 15th day of February, 1946.

Unlike the ordinary case which is brought here for review this appeal discloses no controversy between the parties to the action. The appellees have made no appearance. The same holds true of the clerk of the court who, although not a party to the original suit, is affected by the result of our decision. None of appellant's clients question his action in collecting their money from the clerk and it must be conceded that in doing so he was acting as their

attorney of record. Nor is it contended by anyone that appellant acted in bad faith or was guilty of fraudulent conduct.

From what has been said it must be apparent the sole issue involved is whether, under conditions and circumstances as heretofore related, an attorney of record, whose authority to represent his clients in a given action is unquestioned and who has collected money belonging to such clients as a result thereof, may be required by the district court having jurisdiction of such action to return that money to the clerk of the district court.

The general rule, as stated in all legal treatises and textbooks, is that where an attorney has recovered judgment for his client, he has authority, by virtue of his employment as attorney to receive payment and enter satisfaction of such judgment (5 Am. Jur. 323, § 103; 7 C. J. S. 915, § 99; 6 C. J. 654, § 164; 1 Thornton on Attorneys at Law 361, § 204; 2 Black on Judgments, 2d ed. 1457, § 986; 2 Freeman on Judgments, 5th ed. 2316, § 1113).

It has been recognized and applied by the Supreme Court of the United States (*Erwin v. Blake*, 8 Pet. [U. S.] 18, 25, 8 L. Ed. 852) and by the courts of many foreign states. Many pertinent decisions from those jurisdictions might be cited but to list them would be an endless task. A few of those particularly applicable to the case at bar are: *Cauthen v. Cauthen*, 76 S. C. 226, 56 S. E. 978; *Ducett v. Cunningham*, 39 Me. 386; *Brown v. Grimes*, 74 Ind. App. 655, 219 N. E. 483; *Combs' Admr., v. Va. Iron, Coal & Coke Co.*, 236 Ky. 524, 33 S. W. 2d 649; *McCully v. Kelley-Dempsey Co.*, 227 Mo. App. 775, 57 S. W. 2d 784.

This court is also in accord with the rule and has frequently applied it.

In the early case of *Hendrix v. Fuller*, 7 Kan. 331, we held:

"An attorney making an acknowledgment of service on the back of the summons, will in the absence of proof to the contrary, be presumed to have had authority for so doing." (Syl. ¶ 1.)

And said:

"That an attorney may take any ordinary step in a case for a party, and, taking it, will be presumed to have done so by that party's authority, is unquestioned. Entering an appearance is one of those steps." (p. 337.)

Later in *Dolan, Sheriff, v. Van Demark*, 35 Kan. 304, 10 Pac. 848, it was held:

"An attorney at law and banker, having claims in his hands for collection, will, where it is necessary to secure the collection of such claims, presump-

tively have authority to take as collateral security and in his own name a promissory note secured by a chattel mortgage." (Syl. ¶ 1.)

And said:

". . . But whether it was best and necessary, or not, is not a question for third parties to raise. As against Dolan and the persons whom he represents, we think that Van Demark, as the agent of the owners of the claims, had a right to do all that he has done in the present case." (p. 307.)

In one of this court's notable cases, *Overlander v. Overlander*, 129 Kan. 709, 284 Pac. 614, where a party sought to avoid the binding force of the rule, it was said:

"When a party appears in an action by his attorney who conducts proceedings in his behalf, his authority to act in behalf of his client is presumed, in the absence of any showing to the contrary, and his acts bind his client. (*Lamme v. Schilling*, 25 Kan. 92; *Kerr v. Reece*, 27 Kan. 469; *O'Flanagan v. Case*, 41 Kan. 183, 21 Pac. 96.)" (p. 712.)

Still later in *Swisher v. McMain*, 153 Kan. 401, 110 P. 2d 765, it was stated thus:

"The law is entirely clear that on principle and on precedent a client is bound by the acts and conduct of his attorneys except where he takes timely steps to repudiate them by showing their want of authority to act in his behalf." (p. 409.)

So, also, it was recognized in our more recent decision of *In re Estate of Williams*, 160 Kan. 220, 160 P. 2d 260, where we said:

"Counsel for the respective parties agree, with commendable candor, that as a general rule, under ordinary circumstances, an attorney who has recovered a judgment for his client has authority, by virtue of such employment, to receive payment on such judgment and may enter satisfaction of the same." (p. 223.)

In partition cases our decisions are fortified by the statute of this state. G. S. 1935, 60-2111, authorizing the sale of property in such a proceeding, provides that the court shall make an order directing the sheriff to sell the property in the same manner as in sales of real estate on execution. That was done. We assume the sheriff was directed to pay the proceeds of the sale to the clerk. Anyway the latter eventually received the money. In such a situation G. S. 1935, 60-3430, directs how, to whom, and under what circumstances it is to be paid out. It reads:

"If any clerk of a court shall neglect or refuse on demand made by the person entitled thereto, his agent *or attorney of record,* to pay over all money by him received in his official capacity for the use of such person, every such clerk may be amerced, and the proceedings against him and his sureties shall

be the same as provided for in the foregoing section against sheriffs and their sureties." (Emphasis supplied.)

Inasmuch as it cannot be denied appellant was acting as attorney of record for his clients on the date on which he collected the money due them, and since they had not then and do not now contend his action was unauthorized, we have no difficulty in concluding, under the authorities to which we have heretofore referred, that appellant had the right as such attorney not only to make the collection but to receipt and satisfy the clerk's docket for the amounts found by the court in its order of distribution to be due his respective clients. His action in respect to such matters was the action of his clients. It bound them just as effectively as if they had taken it in person. Under the existing circumstances payment to him was payment to them and the trial court had no more authority to direct appellant to return the money than it had to direct the parties to return it had they personally collected and received it from the clerk. This, of course, could not have been done since the record reveals that all parties connected with the cause, including the court itself concede that under the order of distribution appellant's clients were entitled to the amount of money actually collected by him as their attorney.

What has been said disposes of this appeal. When analyzed each and all of the reasons given by the trial court as grounds for its action were predicated upon the erroneous premise that payment to appellant did not amount in law to payment to his clients. The conditions and circumstances disclosed by the record did not justify the order as made and we fail to find any other ground on which it can be sustained.

The order directing the appellant to repay the money collected by him from the clerk of the court is reversed and set aside.