No. 29,079.

JESSE L. OVERLANDER, *Appellee*, v. JACOB ALPHEUS OVERLANDER, *Defendant;* CHARLES L. OVERLANDER, *Appellant.*

(284 Pac. 614.)

Opinion filed February 8, 1930.

*Jacob A. Overlander,* of New York, N. Y., for the appellant; *R. A. Brown, R. L. Douglas* and *R. A. Brown, Jr.,* all of St. Joseph, Mo., of counsel.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, and *Arthur S. Brewster,* of Troy, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: In this action judgment was obtained by J. L. Overlander against Jacob Alpheus Overlander for the sum of $505.24. Charles L. Overlander filed a petition asking that he be allowed to interplead in the action and be subrogated to said judgment because of the following facts:

In another lawsuit in Doniphan county (being action No. 5898) the said interpleader, Charles L. Overlander, obtained judgment against J. L. Overlander, plaintiff in the instant case, for the sum of $6,835.18. In that action an attachment was levied upon the undivided one-fifth interest of J. L. Overlander in certain lands in Doniphan county. In the determination of that action the court made an order that the sale under the attachment should be held in abeyance until such time as a partition suit which was then pending between said parties and other parties in interest, in the supreme court of Kansas (which was action No. 5819 in the district court of Doniphan county), should be determined. This latter action was finally terminated and resulted in an order of partition adjudicating the interests of the parties to the lands involved in said action, and establishing that Jesse L. Overlander was the owner of an undivided one-fifth interest in said real estate. The decree of partition provided that the proceeds derived from the sale of the one-fifth interest of the defendant, Jesse L. Overlander (J. L. Overlander, plaintiff in the case at bar), should be impounded with the clerk of the court to await adjudication of priority of liens. The proceeds of this one-fifth share of the defendant, Jesse L. Overlander, amounted to $5,290.35.

After this fund was impounded with the clerk of the court the Federal Trust Company, upon a proper adjudication, was permitted to draw down the sum of $3,689.30 upon a lien established by it. Subsequently, and on October 21, 1924, a motion was made by Jacob A. Overlander (who is the defendant in the present case) to permit him to draw from said fund the sum of $596.14 for the purpose of reimbursing the said Jacob A. Overlander for money paid out by him for taxes on the interest in the land which was owned by Jesse L. Overlander. These withdrawals from the fund originally impounded with the clerk reduced the same so that there was only approximately $1,000 left in the fund to be applied upon the judgment which Charles L. Overlander had obtained against Jesse L. Overlander in action No. 5898.

Charles L. Overlander came into this action and sought to interplead on the theory, evidently, that the judgment of Jesse L. Overlander against the defendant Jacob A. Overlander was an asset which, if he could subject it to payment of his judgment against Jesse L. Overlander, would thereby partially reimburse him on said judgment. He further set out in his petition that at the time this

action was originally instituted by Jesse L., Overlander against Jacob A. Overlander the defendant had a valid counterclaim against the plaintiff for the amount of taxes originally paid by the defendant for the plaintiff. Plaintiff in this action sought to recover on account of the share of the rents and profits due him on his one-fifth interest which had been collected by the defendant Jacob A. Overlander.

The interpleader set up that when Jacob A. Overlander obtained the order of the court permitting him to draw down out of the share of the funds impounded with the clerk, the amount of the taxes previously advanced by the defendant Jacob A. Overlander, that this destroyed the counterclaim which defendant had against plaintiff in the present case and enabled the plaintiff to obtain the judgment against the defendant. All of which sets forth a rather hazy, involved and complicated cause for interplea, if any. It sets forth a theory, but whether or not it passes from the stage of a mere theory this court at this time will not undertake to decide.

The right to interplead, if any, is conclusively shown to be barred by the record which was made upon the hearing of the petition for leave to interplead. At that time there were introduced in evidence the files in the partition suit, and these files contained, among other things, a copy of the order which was made on June 27, 1924. The interpleader alleged in his petition to interplead, among other things, that the defendant in this case, Jacob A. Overlander, was allowed to draw down the amount of the taxes out of the funds impounded with the clerk of the court "without notice to your petitioner and without his consent." In the journal entry of June 27, 1924, in the partition action which ordered the payment to Jacob A. Overlander of the funds therein specified to reimburse said Jacob A. Overlander for taxes paid by him (for which plaintiff in this action, Jesse L. Overlander, was liable), it appears that all parties to said action appeared by their respective attorneys. The interpleader herein (Charles L. Overlander) appeared by his attorney, Jacob A. Overlander, who is the defendant in this action and who now comes here as attorney for the interpleader. This same attorney, Jacob A. Overlander, appeared as shown by the journal entry of June 27, 1924, in his own behalf and as attorney for Charles L. Overlander, the interpleader herein, and yet he now comes into court as attorney for the interpleader and attempts to set up as one of the grounds why the interpleader should be permitted to come into this action, the lack of notice and consent on the part of the interpleader.

The records of the court in evidence prove that the interpleader herein (Charles L. Overlander) had full and complete knowledge of the journal entry permitting Jacob A. Overlander to withdraw funds from the proceeds of the one-fifth interest of Jesse L. Overlander which were on deposit with the clerk of the court. . The actual knowledge of his attorney was imputed to and became the knowledge of Charles L. Overlander. (*Hess v. Conway*, 92 Kan. 787, 142 Pac. 253.) His attorney appeared in the hearing of the application for Charles L. Overlander, and yet this same attorney has the audacity to attempt to again come into this court claiming a lack of knowledge on the part of Charles L. Overlander. If it is a fact that Charles L. Overlander did not have any actual knowledge of the action being taken in his behalf by his attorney, Jacob A. Overlander, when the order of withdrawal above referred to was entered, reimbursing the said Jacob A. Overlander, then it would appear that Charles L. Overlander might have an action against his attorney for fraud. When a party appears in an action by his attorney who conducts proceedings in his behalf, his authority to act in behalf of his client is presumed, in the absence of any showing to the contrary, and his acts bind his client. (*Lamme v. Schilling*, 25 Kan. 92; *Kerr v. Reece*, 27 Kan. 469; *O'Flanagan v. Case*, 41 Kan. 183, 21 Pac. 96.) If the acts of his attorney in the taking of the order were unauthorized, then does it not seem ridiculous that Charles L. Overlander would now have the same attorney appearing for him in this action?

The attorney for interpleader wants his client to have permission to interplead and be subrogated to a judgment against said attorney. This attorney pleads lack of knowledge on the part of his client of certain acts of the attorney done by him in behalf of said interpleader. What kind of legal juggling is this? It appears that the attorney, Jacob A. Overlander, in filing this petition for leave to interplead, was simply trifling with the court. His conduct appears to us to be most reprehensible. It smacks of bad faith. An attorney is an officer of the court and as such should at all times deal fairly and honorably with the court and should conduct himself, both with court and client, in a manner which displays the utmost good faith.

On the state of the record we hold that the interpleader was bound by the acts of his attorney, and the decision of the lower court denying the right to interplead is therefore affirmed.