No. 126,501

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH STOUT and KATELYN STOUT d/b/a STOUT CONSTRUCTION CO.,
*Appellants*,

v.

KANEQUIP, INC.,
*Appellee*.

SYLLABUS BY THE COURT

1.

On motion and just terms, the court may relieve a party from a final judgment for any of the reasons set forth in K.S.A. 60-260(b)(1)-(6).

2.

K.S.A. 60-260(b)(1) permits relief by a party because of mistake, inadvertence, surprise, or excusable neglect. The motion must be filed within a reasonable time not more than one year from the date of judgment.

3.

K.S.A. 60-260(b)(6) is a catchall provision providing relief from final judgment for any other reason justifying it. This provision is to be liberally construed to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts.

4.

A ruling on a motion for relief from judgment under K.S.A. 60-260(b) rests within the sound discretion of the district court. Abuse of discretion occurs when the district

1

court's decision is based on a legal or factual error or if no reasonable person would agree with it.

5.

When ruling on a motion to set aside an order under K.S.A. 60-260(b), the district court should consider all the facts, including (1) whether the motion was filed within a reasonable time, (2) whether the motion will prejudice the other party, and (3) whether the moving party has good cause to move to set aside an order.

Appeal from Ford District Court; ANDREW STEIN, judge. Submitted without oral argument. Opinion filed June 28, 2024. Reversed and remanded.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellants.

*Patric S. Linden*, *Trevor Bond*, and *Ellen C.T. Mathis*, of Case Linden Kurtz Buck P.C., of Kansas City, Missouri, for appellee.

Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.

LAHEY, J.: Joseph Stout and Katelyn Stout d/b/a Stout Construction Co. (the Stouts) sued KanEquip, Inc., over a dispute involving KanEquip's unsuccessful attempts to repair the Stouts' skid steer. When the Stouts' expert witness failed to appear for his deposition, KanEquip sought discovery sanctions, including that the Stouts' case be dismissed with prejudice. Between the time the motion was filed and the scheduled hearing date, the Stouts' attorney, Terry J. Malone was suspended from the practice of law by the Kansas Supreme Court. He mailed written notice of his suspension to the Stouts and defense counsel as required by Supreme Court Rule 231, and he withdrew from the case six days before the hearing. When neither Malone nor the Stouts appeared at the sanction hearing, the district court granted KanEquip's motion and dismissed the case with prejudice. Contending they were unaware of the motion or hearing date, the

2

Stouts asked the district court to set aside the dismissal under K.S.A. 2022 Supp. 60-260(b)(1) and (b)(6). Although no evidence was presented refuting the Stouts' lack of actual knowledge of the hearing, the district court denied their motion, concluding that Malone's knowledge of the motion and hearing must be imputed to them. This appeal follows.

Based on the unusual factual circumstances of the case in which the Stouts became involuntarily pro se shortly before the sanctions hearing, along with the unrefuted evidence that the Stouts had no actual knowledge of the existence of the motion or hearing date, we find the district court erred by denying the Stouts' motion to set aside the judgment. We reverse the decision of the district court and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The Stouts brought their skid steer to KanEquip, Inc., a mechanical repair shop, hoping to have engine problems fixed, which they believed were caused by contaminated diesel fuel. The Stouts later retrieved their skid steer from the repair shop—believing that KanEquip had repaired it—and they paid KanEquip $8,952.85 for its work. Almost immediately, though, the Stouts knew that KanEquip had not resolved the engine problems. So a few months later, the Stouts took the skid steer to a different repair shop, which made some additional repairs, though none involved the engine issues that KanEquip had been tasked with.

Since the skid steer still had engine problems, the Stouts brought it back to KanEquip. After looking at the machine, and attempting to repair it, KanEquip contacted the Stouts, explaining (1) that it could not fix the skid steer and (2) that the Stouts owed $9,007.19 for its attempted repair.

3

The Stouts initially refused to pay KanEquip, but they ended up paying their outstanding bill and reclaiming their skid steer. Soon after, the Stouts discovered that KanEquip could have fixed their skid steer with "only a simple repair." The Stouts hired Malone as their attorney and, in March 2021, filed this lawsuit against KanEquip for breach of contract, violation of the Kansas Consumer Protection Act (KCPA), fraud, and conversion. For each claim, the Stouts asserted that they sustained damages in excess of $75,000. KanEquip denied the Stouts' claims and raised several affirmative defenses.

KanEquip filed a motion for judgment on the pleadings in June 2021. It was initially granted—Malone filed no response to the motion and failed to appear for the motion hearing. But ultimately, Malone was allowed to file a response out of time, and the motion to dismiss was resolved in January 2022. A status conference was held shortly after.

In June 2022, KanEquip filed a motion to strike expert disclosure for the Stouts' failure to comply with the expert witness disclosure requirement in K.S.A. 2021 Supp. 60-226. In line with KanEquip's request, the district court ordered sanctions against the Stouts on September 12, 2022, in the sum of $1,572.50 in attorney fees and costs to be paid within 30 days.

Less than a month later, on October 5, KanEquip again asked the district court to sanction the Stouts for another discovery violation. According to KanEquip's attorney, after traveling to Colorado Springs, Colorado, for a scheduled deposition of the Stouts' expert mechanic, the expert never appeared. KanEquip explained that the testimony of the expert mechanic involved "a dispositive issue in the case." And it stressed that "alternate sanctions [had] proven ineffective, and [that the expert's] testimony [was] not cumulative nor corroborative." Then KanEquip cited K.S.A. 2022 Supp. 60-237(b)(2)(A)(v), which states that the district court may "dismiss[] the action or proceeding in whole or in part" for discovery violations, and it asked the court to dismiss

4

the Stouts' case for the discovery violations or award them costs and fees related to the Stouts' expert failing to appear at his deposition.

The same day, KanEquip's attorney submitted a notice of hearing stating that there would be a hearing on its motion for sanctions on November 8, 2022, at 11 a.m. The notice stated that it was sent by electronic filing to Malone. Six days before the hearing, on November 2, Malone submitted a notice of withdrawal under Kansas Supreme Court Rule 231 (2024 Kan. S. Ct. R. at 289).

Malone's notice stated that our Supreme Court suspended him for 90 days, starting on October 14, 2022. Malone mailed a certified notice to the Stouts on October 27 explaining his suspension. In a letter dated October 28, Malone notified KanEquip's attorney of his suspension, and stated: "I have notified my former clients accordingly, and will assist in the expeditious transfer of their files to new counsel at their direction. I will do everything within my present ability to minimize the impact of my suspension on the resolution of these cases." The notice does not contain any reference to or suggestion that Malone informed the Stouts about the upcoming November 8 hearing on discovery sanctions.

Neither Joseph nor Katelyn appeared at the November 8 hearing on KanEquip's motion for sanctions, and they had no legal representation at the hearing since Malone was suspended from practicing law. Nonetheless, the district court proceeded with the sanctions hearing.

At the start of the hearing, the district court and KanEquip's attorney discussed what they knew about Malone's suspension. KanEquip's attorney noted that the day before, Malone's assistant left a voicemail asking "whether or not this hearing was still happening." She said that the assistant also said the Stouts were seeking to hire a new attorney but had not yet found one. KanEquip's attorney explained she did not have a

5

chance to return the call because she was out of her office all day, and therefore, did not know she had the voicemail until the end of the day.

The district court ultimately determined that because Malone had been suspended in mid-October, the Stouts should have known about the suspension and had enough time to decide whether they wanted to continue with their lawsuit against KanEquip. Thereafter, KanEquip's attorney discussed the ongoing discovery issues, argued the Stouts were not meeting the burden to prosecute their case, and asked the district court to dismiss with prejudice.

In the end, the district court agreed with KanEquip and dismissed the Stouts' claims against KanEquip with prejudice:

> "So the Court finds that in light of the fact that parties—or [the Stouts are] not here today or made any effort to appear other than apparently a last-minute voicemail from Mr. Malone's office, the Court finds that it is appropriate to grant the motion to dismiss this case with prejudice and it is going to make that its order. I will specifically just note that there are some unusual complications with defense counsel's suspension for 90 days. That's not necessarily attributable to the [Stouts] themselves. However, the Court finds that, you know, from the beginning of this case, they've been free to employ any attorney they wished, have retained and continue to retain Mr. Malone. There have been numerous discovery disputes, some of which have been litigated through motion to compel. Sanctions were originally ordered finally when it came to the Court's attention, and upon the update that those sanctions have not been paid today, the Court finds that those options would be ineffective if that was imposed as the sanction here."

A few weeks later, the Stouts hired a new attorney—Peter J. Antosh—who entered his appearance for the Stouts on November 26, 2022. On March 3, 2023, Antosh moved to set aside the district court's dismissal. That motion is the focus of the Stouts' appeal.

*The Stouts' motion to set aside the dismissal of their claims with prejudice*

Essentially, the Stouts' motion asserted that they were unaware that a motion for sanctions had been filed or set for hearing on November 8. Rather, the Stouts first learned about these events when they received a copy of the district court's November 9 journal entry dismissing their claims against KanEquip with prejudice in the mail.

Separate but essentially identical affidavits from Katelyn and Joseph were attached to the motion to set aside the dismissal. They asserted that prior to receiving a copy of the court's November 9 order, they were unaware that (1) their lawsuit was in jeopardy of dismissal due to discovery deficiencies, (2) monetary discovery sanctions were owed in their lawsuit, and (3) their case was set for a motions hearing on November 8.

The affidavits added that had the Stouts been aware of the motions hearing that was set for November 8, they would have attended it. And the Stouts stated that they would have addressed the discovery problems and monetary sanctions had they known about them. Both Katelyn and Joseph expressed that they wished to proceed with the lawsuit.

Citing these facts, Antosh moved to set aside the district court's dismissal of the Stouts' claims under K.S.A. 2022 Supp. 60-260(b)(1) and (b)(6). The motion asserted that the Stouts were entitled to relief under K.S.A. 2022 Supp. 60-260(b)(1)—which allows a court's order to be set aside because of surprise or excusable neglect—because they were "wholly unaware of the hearing that they missed and of the underlying sanctions issues to be addressed therein." Antosh added that excusable neglect was also present since Malone was suspended from practicing law, meaning the Stouts "were placed into a situation where they were left pro se without having been brought up to speed on the proceedings."

7

Antosh explained that Malone left for a long-planned vacation on October 14 and was suspended from legal practice on October 15. The attorney was largely unreachable following up to and during the two weeks he was gone. In the calamity that ensued with Malone having to withdraw from his pending cases and make appropriate notifications to his clients, courts, and opposing counsel, the Stouts were not provided with notice of hearing or hearing information.

As earlier mentioned, Malone sent the Stouts and KanEquip a notice of withdrawal under Supreme Court Rule 231. This notice did not include (and did not require) information that would have otherwise been required under Rule 1.09, such as "an admonition that the client is personally responsible for complying with all orders of the court and time limitations established by the rules of procedure or by court order" and "notice of the date of any pending hearing, conference, or deadline." Kansas Supreme Court Rule 1.09(b)(1)(B) (2024 Kan. S. Ct. R. at 8) (withdrawal of attorney). Antosh added that the court file does not indicate that KanEquip notified the Stouts of the hearing upon learning that Malone withdrew.

And under K.S.A. 2022 Supp. 60-260(b)(6)—a catchall provision permitting relief from a judgment—Antosh argued good cause existed to permit the case to proceed on the merits, rather than terminating on procedural grounds, because of the "intervening and highly unusual circumstances surrounding the suspension of [the Stouts'] former counsel, which would otherwise operate as a windfall for the defendants."

KanEquip argued that the Stouts lacked good cause for the district court to set aside its dismissal. KanEquip pointed to the earlier discovery struggles and highlighted that the Stouts had not paid the $1,572.50 discovery sanction. KanEquip claimed that Malone's letter about his suspension notified the Stouts about the hearing and the discovery sanctions. Finally, KanEquip asserted that the Stouts failed to timely file their

8

motion to set aside dismissal and that it would be prejudiced by an order setting aside the dismissal because it would lead to more costs and discovery issues.

As neither party requested oral argument, the district court issued a written order denying the Stouts' motion without a hearing. The court reasoned that the Stouts, through Malone, were present when it granted KanEquip's earlier motion to compel and ordered sanctions. And it noted that the November 8 hearing on KanEquip's motion to dismiss and discovery sanctions had been scheduled since October 5, which was before Malone's suspension in mid-October. For those reasons, it found that the Stouts could not be surprised by the hearing or the discovery sanctions and had not shown good cause to set aside dismissal.

Finally, the district court found that Malone's suspension was unrelated to its decision, stressing that the Kansas Supreme Court's suspension of Malone occurred between the time the district court imposed the initial $1,572.50 discovery sanction and set the November 8 hearing. The district court also stated that the Stouts' "unexplained delay of nearly four months in filing their motion to set aside dismissal further indicate[d] an ongoing inability or unwillingness to prosecute this action promptly."

The Stouts appeal the district court's order denying their motion to set aside the dismissal of its case against KanEquip.

ANALYSIS

A threshold question is whether we have jurisdiction to review the district court's decision to deny the Stouts' motion to set aside the dismissal of their claims against KanEquip. We have a duty to question jurisdiction on our own initiative if the record reveals a potential jurisdictional hurdle. And questions involving jurisdiction are

9

questions of law over which we exercise unlimited review. *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016).

The filing of a timely notice of appeal is jurisdictional. *In re Care and Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). In civil cases, absent an exception, K.S.A. 2023 Supp. 60-2103(a) requires that a party file a notice of appeal to our court no later than 30 days after the district court's entry of judgment.

Here, the Stouts moved to set aside the district court's dismissal of their case against KanEquip, and the district court entered the order denying that motion on March 22, 2022. The Stouts appealed 28 days later. We thus have no trouble concluding that we have jurisdiction to consider the Stouts' arguments about the district court's denial of their motion to set aside its dismissal as they timely appealed that order.

For clarity, we note that because the Stouts did not timely appeal the district court's November order dismissing their case with prejudice, we lack jurisdiction to review that decision and do not address it on the merits. We consider only whether the district court erred in denying the Stouts' motion for relief from that judgment under K.S.A. 2022 Supp. 60-260(b).

*The district court abused its discretion in denying the Stouts' motion to set aside its dismissal with prejudice.*

The Stouts moved to set aside the district court's dismissal of their case against KanEquip under K.S.A. 2022 Supp. 60-260(b)(1) and (b)(6). On motion and just terms, the court may relieve a party from a final judgment for any of the reasons set forth in K.S.A. 2023 Supp. 60-260(b)(1)-(6). A person may obtain relief under K.S.A. 2023 Supp. 60-260(b)(1) if they prove "[m]istake, inadvertence, surprise or excusable neglect." Excusable neglect has no statutory definition and "must be determined on a case by case

10

basis under the facts presented." *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978). And under K.S.A. 2023 Supp. 60-260(b)(6), relief may be obtained for "any other reason that justifies relief." As our Supreme Court has mentioned, "'K.S.A. 60-260(b)(6) is to be liberally construed "to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts."'" *Garcia v. Ball*, 303 Kan. 560, 570, 363 P.3d 399 (2015) (quoting *In re Estate of Newland*, 240 Kan. 249, 260, 730 P.2d 351 [1986]).

When ruling on a motion to set aside an order under K.S.A. 60-260(b), the district court should consider all the facts, including (1) whether the motion was filed within a reasonable time, (2) whether the motion will prejudice the other party, and (3) whether the moving party has good cause to move to set aside an order. *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1109, 361 P.3d 515 (2015). On appeal, this court reviews a district court's decision for abuse of discretion, which the party claiming error—here, the Stouts—must prove. 51 Kan. App. 2d at 1109; see also *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022). Abuse of discretion occurs when the district court's decision is based on a legal or factual error or if no reasonable person would agree with it. *Morton County Hospital*, 51 Kan. App. 2d at 1112.

This court exercises unlimited review over errors of law and reviews factual errors for substantial competent evidence, which is evidence that possesses relevance and substance. *Roll v. Howard*, 59 Kan. App. 2d 161, 172, 175-76, 480 P.3d 192 (2020). On appeal, we "view the evidence in the light most favorable to the prevailing party, disregarding conflicting evidence or other inferences that might be drawn." 59 Kan. App. 2d at 172; see also *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

With those principles in mind, our discussion turns to the Stouts' sole complaint— that the district court erred by denying their motion to set aside its dismissal of their

claims against KanEquip with prejudice. In short, we agree with the Stouts that the district court abused its discretion. We explain our reasoning now.

The district court denied the Stouts' motion to set aside its dismissal for two reasons: (1) Malone's knowledge of the discovery hearing—and by extension fault—was to be imputed onto the Stouts under *Overlander v. Overlander*, 129 Kan. 709, 284 P. 614 (1930); and (2) the three months it took the Stouts' new attorney to file their motion to set aside dismissal conveyed an "ongoing inability or unwillingness to prosecute this action promptly." In light of the unique circumstances here, we find neither reason representative of sound discretion.

To begin, the district court erred when it found that Malone's knowledge about the discovery hearing was to be imputed and leveraged against his former clients, the Stouts. The district court erroneously interpreted the Kansas Supreme Court's holding in *Overlander* to be that "[a]ctual knowledge of a client's attorney is imputed to and becomes the knowledge of the client." We agree that the district court cited a valid general rule that notice to counsel is adequate notice to a client. But we disagree with the district court and the dissent's view that this general rule is absolute and binding under all circumstances. The holding in *Overlander* is not that a client is always bound by actions of his or her lawyer, or that knowledge to the lawyer is always knowledge to the client; rather, "[w]hen a party appears in an action by his attorney who conducts proceedings in his behalf, his authority to act in behalf of his client is *presumed*, *in the absence of any showing to the contrary,* and his acts bind his client." (Emphasis added.) 129 Kan. at 712; see also *Reynolds v. Fleming*, 30 Kan. 106, 111, 1 P. 61 (1883); *Hess v. Conway*, 92 Kan. 787, 142 P. 253 (1914), *aff'd sub nom. Holmes v. Conway*, 241 U.S. 624, 36 S. Ct. 681, 60 L. Ed. 1211 (1916); *Butler v. U.S.D. No. 440*, 244 Kan. 458, 462, 769 P.2d 651 (1989).

12

Thus, the general rule that notice to counsel is notice to the client is only a presumption. And here, the only *evidence* the district court had about whether the Stouts had notice of the November 8 hearing was from their unrefuted affidavits attached to their motion to set aside dismissal. Those affidavits establish that the Stouts did not have notice of the sanctions hearing, were unaware that prior sanctions had even been imposed against them, and had no knowledge that they owed outstanding monetary fees. In fact, the affidavits set out that the Stouts only learned about the hearing and prior discovery problems after receiving a copy of the court's November 9 journal entry and order of dismissal with prejudice in the mail. This unchallenged evidence is sufficient to rebut any presumption that the Stouts—through Malone—knew that a discovery sanctions hearing was set to occur.

Nor is there any evidence that Malone told the Stouts about the November 8 hearing. Our review of the record shows that Malone sent two form letters—one to the Stouts and one to KanEquip's attorney—about his suspension from the practice of law. A lawyer is required to send this kind of letter following a suspension. See Kansas Supreme Court Rule 231(a) (2024 Kan. S. Ct. R. at 289) (notice to clients and opposing counsel following suspension). Each of these letters generally states that Malone notified the Stouts of his suspension, but—critical here—neither letter says anything about him specifically notifying the Stouts that a motion for sanctions had been filed or that it was set for hearing in a matter of days.

"The right to adequate notice in judicial proceedings is a fundamental one, guaranteed both by statute and by the Fourteenth Amendment to the Constitution of the United States. . . . Without such notice, due process is denied and any judgment rendered is void." *Sweetser v. Sweetser*, 7 Kan. App. 2d 463, 465, 643 P.2d 1150 (1982); see U.S. Const. amend. 14; Kan. Const. Bill of Rights, § 18. Due process requires that notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re*

13

*H.C.*, 23 Kan. App. 2d 955, 958, 939 P.2d 937 (1997) (quoting *In re L.S.*, 14 Kan. App. 2d 261, 263, 788 P.2d 875 [1990]). Indeed, K.S.A. 2023 Supp. 60-237(c), which authorized the district court to impose discovery sanctions, instructs that a court may order discovery sanctions "on motion *and after giving an opportunity to be heard*." (Emphasis added.) Under the unusual circumstances here, the evidence before the district court demonstrated that the Stouts had no such opportunity.

Malone was suspended from the practice of law, had withdrawn his representation of the Stouts, and the only "notice" evidence the court had to consider was from the Stouts' affidavits. See *Larson Operating Co. v. Petroleum, Inc.*, 32 Kan. App. 2d 460, Syl. ¶ 9, 461, 84 P.3d 626 (2004) ("[Discovery sanctions] must be exercised with restraint and caution and may be imposed only after proper notice and an opportunity for a hearing."). Notice and opportunity to be heard are fundamental due process rights that were lacking here—the result of excusable neglect and surprise.

Practically speaking, the disciplinary suspension of a lawyer operates to protect the public and the lawyer's clients. But the unintended consequence or result of that suspension here is that the Stouts were adversely impacted—left suddenly and involuntarily pro se and unaware of an upcoming court hearing. Under all the circumstances, we conclude that justice here is best served by granting relief from the judgment, and we find K.S.A. 2023 Supp. 60-260(b)(6) applies as well. Justice is not served by saddling the Stouts, who were unrepresented and unaware of the motion or the hearing, with the most extreme sanction available—dismissal of their claims with prejudice. *Boydston v. Kansas Board of Regents*, 242 Kan. 94, 101, 744 P.2d 806 (1987) ("Dismissal with prejudice is a drastic and final action."). By not considering Malone's suspension to be material—despite unrefuted evidence that the Stouts had no actual notice of the hearing—we find the district court abused its discretion in denying the Stouts' motion to set aside the judgment.

Still, citing *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986), the dissent asserts that this court cannot now "reward" the Stouts for being pro se and claiming they did not know about the November 8 hearing. Slip op. at 29. We are not persuaded by this argument. For one, this situation is factually different from *Mangiaracina*, a case in which the litigant was voluntarily representing himself. Here, the Stouts did not make that choice—they were rendered pro se when Malone was suspended from practicing law by Supreme Court order. Moreover, we disagree that the Stouts are being rewarded or receiving some advantage because they were pro se—our decision simply protects their fundamental due process rights.

KanEquip makes two more arguments along these same lines, which we find uncompelling. First, KanEquip points out that in their affidavits, the Stouts acknowledged that they were aware that Malone had withdrawn from their case on November 2 due to his suspension, which was before the hearing. This is true. But KanEquip fails to acknowledge that although the Stouts were aware that Malone withdrew, they were not made aware of the upcoming sanctions hearing or any discovery issues.

Second, KanEquip suggests in its response to the Stouts' motion to set aside dismissal that the Stouts could have contacted the district court clerk or KanEquip's attorney to obtain information on their case. The Stouts could have perhaps done this, but regardless, the evidence showed they were unaware of the hearing. The Stouts were not sitting on their hands, they were, reportedly, actively seeking a new attorney to continue their lawsuit.

As a final note, we are not concerned by the timeframe in which the Stouts brought their motion to set aside the district court's dismissal through their new attorney Antosh. See K.S.A. 2023 Supp. 60-260(c) (a motion to set aside an order under subsection [b] must be brought "within a reasonable time"). Although the motion could have been filed sooner—new counsel obtained the Stouts' affidavits in December yet did

15

not file the motion until March—the Stouts brought their motion well within one year. See K.S.A. 2023 Supp. 60-260(c)(1)-(3) (A party must move to set aside an order "no more than one year after the entry of the judgment or order, or the date of the proceeding."). And we note that the district court did not actually find the delay was "unreasonable." Instead, it found the delay was more evidence of the Stouts' "ongoing inability or unwillingness to prosecute this action promptly." Additionally, we fail to see a reason why KanEquip was prejudiced by the delay.

*Morton County Hospital* sets out a test for legal prejudice:

> "The longer the delay in filing a motion under K.S.A. 2014 Supp. 60-260(b) and the more expenses incurred by the nonmoving party to enforce the judgment or the more the nonmoving party has relied on the judgment to his or her detriment, the more likely there will be sufficient prejudice to support a finding of unreasonable delay." 51 Kan. App. 2d 1104, Syl. ¶ 5.

The record before us lacks evidence of any expenses incurred by KanEquip to enforce the judgment it obtained, and there is likewise no evidence it detrimentally relied on the judgment. See *Estate of Nilges v. Shawnee Gun Shop, Inc*., 44 Kan. App. 2d 905, Syl. ¶ 2, 242 P.3d 1211 (2010) ("Kansas courts have traditionally asked whether the defendant has suffered from plain legal prejudice other than the continuing prospect of a second suit on the same cause of action."). KanEquip knew that this motion was coming since Antosh sent an email explaining that he intended to set aside the district court's dismissal shortly after the Stouts hired him on November 26. That Antosh theoretically could have brought this motion earlier does not make the intervening time unreasonable.

Moreover, the Stouts' affidavits illustrate a willingness to actively prosecute and participate in their case. Katelyn stated that, "[h]ad I been aware of the discovery problems and monetary sanctions, I would have taken steps to address them." And she added that her "lawsuit was filed because I suffered economic damages due to actions of

16

the Defendant" and that "I wish to proceed with my lawsuit." Joseph's affidavit echoed this message. This is contrary to the district court's decision to deny the Stouts' motion to set aside dismissal because they refused to participate in their case.

In reaching this decision, the district court was unable, or unwilling, to separate Malone from the Stouts. Even though the discovery was delayed while Malone was litigating this case, the district court ignored that Malone had withdrawn, that the Stouts had new counsel, and that the Stouts unequivocally asserted a willingness to proceed with their lawsuit and pay the sanction that they did not previously know they owed. The Stouts should not be punished so extremely without so much as the opportunity to appear, be heard, and defend against the sanction.

The district court abused its discretion by denying the Stouts' motion to set aside its dismissal of their claims against KanEquip. The Stouts are entitled to relief from the judgment under K.S.A. 2023 Supp. 60-260(b)(1) and (b)(6). We thus reverse the district court's denial of the Stouts' motion and remand the case for further proceedings in line with this opinion.

Reversed and remanded.

\* \* \*

GREEN, J., dissenting: I respectfully dissent from the majority's decision on this appeal.

*The Logical Fallacy of Drawing an Affirmative Conclusion from a Negative Premise*

One of the basic flaws in the majority analysis is that it has fallen prey to the logical fallacy of drawing an affirmative conclusion from a negative premise. Indeed,

Aldisert writes that "[b]ecause it is so obvious in the law we seldom encounter the Fallacy of Drawing an Affirmative Conclusion from a Negative Premise." Aldisert, Logic for Lawyers, pp. 73-74 (3d ed. 1997). For example, the crux of the majority's holding relies on the affidavits of Joseph Stout and Katelyn Stout d/b/a Stout Construction Co. (the Stouts) where each of them claim: "I was unaware that my case was set for a motions hearing on November 8, 2022." For example, out of each of their 11-sentence affidavits, the Stouts both used the word "unaware" three times and used the words, "Had I been aware," twice in each of their affidavits. The majority simply parrots the negative unawareness language of the Stouts' two affidavits to draw an inference that the Stouts were unaware that the district court was having a hearing on November 8, 2022. The majority's argument forms the following categorical syllogism:

Major premise: The right to adequate notice in judicial proceedings is a fundamental one, and without such notice, any judgment rendered by the court is void.

Minor premise: The Stouts did not have notice that the district court was having a hearing on November 8, 2022.

Conclusion: Thus, the district court abused its discretion in denying the Stouts' motion to set aside the judgment.

Under rule five, if either premise of a valid categorical syllogism is negative, the conclusion must be negative. Aldisert, Logic for Lawyers, p. 73 (3d ed. 1997). Accordingly, logic precludes drawing a positive conclusion from a negative premise, as "I was unaware that my case was set for a motions hearing on November 8, 2022."

To prove a negative is sometimes an impossible task. For instance, not knowing that something exists is simply not knowing. In the same way, the Stouts' claim of their unawareness of the November 8, 2022 hearing date does not imply that they did or did

18

not know of that hearing date. In that regard, the fallacy of negative proof is an attempt to sustain a factual proposition merely by negative evidence. See Aldisert, Logic for Lawyers, p. 156 (3d ed. 1997).

On the other hand, in this record of appeal, the district court judge, in his order denying the Stouts' motion to set aside the district court's dismissal of their case, points us to his affirmative or positive evidence of a notice of hearing, electronically filed on October 5, 2022, in the Stouts' case, scheduling a hearing before him on "Tuesday, November 8, 2022, at 11:00 a.m. Central Time." Under Kansas law, as discussed later in this dissent, this notice of hearing gave the Stouts notice of the November 8 hearing date based on an electronic filing served on their attorney, Terry J. Malone. And when Malone was later suspended from the practice of law by our Supreme Court and the Stouts became pro se litigants, this same notice again gave them notice of the November 8, 2022 hearing date.

*Order of Dismissal*

In its order denying the Stouts' motion to set aside the district court's dismissal, the district court judge set out in scrupulous detail his rulings and findings:

"1. Actual knowledge of a client's attorney is imputed to and becomes the knowledge of the clients. *E.g., Overlander v. Overlander*, 129 Kan. 709[, 284 P. 614] (1930).
"2. On August 23, 2022, Plaintiffs were present through counsel at the hearing where the Court granted Defendant's motion to compel discovery and the Court ordered sanctions.
"3. On September 12, 2022, the Court entered its Order Imposing Sanctions. Plaintiffs, through counsel, received notice of the entry of the order through the electronic filing system. Regardless, Plaintiffs have failed to pay the sanctions.
"4. On October 5, 2022, Plaintiffs, through counsel, received notice of hearing on Defendant's motion for sanctions scheduled on November 8, 2022, through the electronic

19

filing system. The same day, the Court emailed the Zoom hearing information to Plaintiffs' counsel. Plaintiffs did not appear.

"5. On October 14, 2022, the Kansas Supreme Court suspended Plaintiffs' counsel from the practice of law. *In the Matter of Terrence J. Malone*, [316 Kan. 488, ]518 P.3d 406, 415 (Kan. 2022). Because the suspension did not arise until after the Court ordered sanctions and set the November 8 hearing, the suspension did not contribute to the discovery issues giving rise to the dismissal of this case.

"6. Because Plaintiffs, through counsel, were aware of the sanctions and hearing date, there is no surprise.

"7. Plaintiffs' unexplained delay of nearly four months in filing their motion to set aside dismissal further indicates an ongoing inability or unwillingness to prosecute this action promptly.

"8. No good cause otherwise exists for the Court to set aside its dismissal of this action."

As the district court judge acknowledged in his order of dismissal, he drew guidance from our Supreme Court's decision in *Overlander v. Overlander*, 129 Kan. 709, 712, 284 P. 614 (1930)—a case where our Supreme Court held that knowledge of an attorney is imputed to the client. Here, the district court judge ruled that at the very least, any knowledge Malone had about the hearing had been imputed onto the Stouts. Indeed, the district court and this court are duty-bound to follow our Supreme Court precedent absent some indication that our Supreme Court is moving away from its previous precedent. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). While the *Overlander* decision that the district court relied on and that the Stouts challenge is from 1930, Kansas appellate courts have continued to follow the rule that an attorney's knowledge imputes to his or her client. See *Butler v. U.S.D. No. 440*, 244 Kan. 458, 462, 769 P.2d 651 (1989), and *Alexander v. Russo*, 1 Kan. App. 2d 546, 555, 571 P.2d 350 (1977). Thus, the district court and this court are duty-bound to apply *Overlander*'s imputation rule. Importantly, the Stouts and the majority proffer no argument suggesting that our Supreme Court intends to depart from its position in *Overlander*, and I find no such indication. As further support for the *Overlander* rule, I note that the United States

20

Supreme Court also applies the imputation rule. See *New York v. Hill*, 528 U.S. 110, 115, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000). Yet, the majority never explains why it is not duty bound to follow our Supreme Court's nearly one-hundred year old precedent.

Also, the district court judge emphasized that the Stouts through Malone were present when he granted KanEquip Inc.'s motion to compel discovery responses and to impose discovery sanctions. And he pointed out that the Stouts had failed to pay the sanctions that he had earlier imposed against them because of their dilatory responses to discovery. The district court judge underscored that the November 8, 2022 hearing on KanEquip's motion to dismiss and discovery sanctions had been scheduled since October 5, 2022, before Malone's suspension. For those reasons, the district court judge found that the Stouts could not have been surprised by having had a November 8, 2022 hearing. Likewise, the district court judge found that the Stouts could not be surprised by the discovery sanctions because the October 5, 2022 notice of hearing provided that the November 8, 2022 hearing was on KanEquip's sanctions motion. Significantly, the district court judge found that Malone's suspension was unrelated to his decision, stressing that our Supreme Court suspended Malone after he had already imposed the discovery sanctions and after he had already scheduled the November 8, 2022 hearing on October 5, 2022. Thus, the suspension did not contribute to the discovery issues giving rise to the dismissal of this case. Lastly, the district court judge ruled that the Stouts presented no good cause to reverse his dismissal of their case against KanEquip. In doing so, the district court judge emphasized that the Stouts "unexplained delay of nearly four months in filing their motion to set aside dismissal further indicate[d] an ongoing inability or unwillingness to prosecute this action promptly."

*The Motion to Set Aside Dismissal*

Turning to the Stouts' underlying arguments about the district court's denial of its motion to set aside its dismissal of their case against KanEquip, I note that while the

21

Stouts have arranged their brief as if they have two separate arguments, the Stouts raise a single complaint about the district court's motion. They argue that the district court erred by denying their motion to set aside its dismissal of their breach of oral contract and KCPA violation claims against KanEquip because of the "unusual circumstances" in their case. In making this argument, the Stouts compare the dismissal of their case to *Canaan v. Bartee*, 272 Kan. 720, 35 P.3d 841 (2001). Relying on *Canaan*, the Stouts argue that clients should not have to pay for the negligence of an attorney through "the sanction of dismissal." Although their second argument is not entirely clear, the Stouts seemingly make a variation of this same argument. They contend that when the district court relied on *Overlander*, the district court erred by "imput[ing] shortfalls" of Malone onto them.

I have difficulty in concluding, as the Stouts do, that the *Canaan* decision closely parallels their case. The facts in this case are far different from those in *Canaan*. *Canaan* is easily distinguishable from this case because the alleged unprofessional representation that the defendants received from their attorney, James Coder, existed during his entire representation of them. By contrast in this case, Malone's alleged unprofessional representation of the Stouts ended when he was suspended by our Supreme Court. As the record indicates, Malone was suspended from the Stouts' case before the crucial hearing date of November 8, 2022.

The Stouts both acknowledged in their affidavits that they knew Malone had withdrawn from their case on November 2, 2022. And because the Stouts did not retain new counsel until November 26, 2022, they were pro se litigants between Malone's suspension and November 26, 2022. Importantly, the Stouts were pro se litigants on the November 8, 2022 hearing date. On the other hand, unlike the Stouts' case, the defendants in *Canaan* never became pro se litigants during any crucial stage in their case. Thus, the *Canaan* decision is simply not analogous to the facts presented in this case.

22

KanEquip responds by arguing the facts of this case and the district court's findings support the denial of the Stouts' motion to set aside the district court's dismissal. It responds that the Stouts have misapplied our Supreme Court's precedent in *Canaan* and *Overlander*. Additionally, it responds that the Stouts' arguments ignore two things: (1) that they did not move to set aside the district court's dismissal of their case with prejudice under K.S.A. 2023 Supp. 60-260(b) within a reasonable time and (2) that the district court dismissed their case with prejudice because of the "ongoing discovery issues [that had] occurred throughout the pendency of [the] case."

When ruling on a motion to set aside an order under K.S.A. 2023 Supp. 60-260(b), the district court is to consider all the facts. This includes considering all of the facts when deciding (1) whether the motion was filed within a reasonable time, (2) whether the motion will prejudice the other party, and (3) whether the moving party has good cause to move to set aside an order. *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1109, 361 P.3d 515 (2015). Then, when reviewing the district court's decision on a motion to set aside an order under K.S.A. 60-260(b), this court applies the abuse of discretion standard. 51 Kan. App. 2d at 1109; see also *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022) (A party claiming an abuse of discretion bears the burden to establish such an abuse occurred.).

Under this standard, this court applies different rules depending on what error is being alleged. *Roll v. Howard*, 59 Kan. App. 2d 161, 175, 480 P.3d 192 (2020). When reviewing an appellant's argument that the district court abused its discretion by making an error of law, this court exercises unlimited review. But when reviewing an appellant's argument that the district court abused its discretion by making a certain fact-finding, this court reviews the fact-finding for substantial competent evidence. 59 Kan. App. 2d at 176. "Substantial competent evidence is '"evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."' [Citation omitted.]" 59 Kan. App. 2d at 172. And while

23

reviewing the district court's fact-finding for substantial competent evidence, this court "view[s] the evidence in the light most favorable to the prevailing party, disregarding conflicting evidence or other inferences that might be drawn." 59 Kan. App. 2d at 172; see *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Most of the Stouts' appellate arguments focus on Malone's suspension in mid-October 2022. Nevertheless, as the district court found when denying the Stouts' motion to set aside the order of dismissal, Malone and the Stouts knew about the November 8, 2022 hearing on KanEquip's motion to dismiss their case with prejudice and impose discovery sanctions before his suspension. The evidence showed that Malone was suspended on October 14, 2022, but the November 8, 2022 hearing was scheduled on October 5, 2022. Although it seems that Malone's assistant left the voicemail on KanEquip's attorney's office phone, the person who left the voicemail clearly indicated (1) that the Stouts knew about the November 8, 2022 hearing and (2) that the Stouts wanted to hire another attorney. Clearly, this voicemail shows that the Stouts were aware of the hearing but simply decided not to attend.

In any case, the majority's analysis hinges on reweighing the evidence in the Stouts' favor. Because our review requires this court to accept the district court's credibility determinations, I would defer to the district court's finding that the Stouts knew that there was a hearing on November 8, 2022, because the hearing had been scheduled since October 5, 2022. See *Roll*, 59 Kan. App. 2d at 173, 176 (holding that this court defers to the district court's fact-findings on appeal when supported by substantial competent evidence). As a result, the Stouts' argument that there was excusable neglect for missing their hearing, or that they were somehow surprised that there was a hearing on November 8, 2022, is fatally flawed. For these same reasons, I would defer to the district court's finding that no other justification supported the Stouts' motion to set aside the dismissal under K.S.A. 2022 Supp. 60-260(b)(6).

As for the "unusual circumstances" that the Stouts argue entitled them to reversal of the district court's dismissal of their case against KanEquip, the Stouts never explicitly say what unusual circumstances supported the district court granting their motion. From the context of the Stouts' other arguments, though, it is apparent that they believe Malone being suspended constituted unusual circumstances that required the district court to grant their motion. The Stouts seemingly assert that clients should never be liable for their attorney's poor representation. Indeed, the Stouts challenge our Supreme Court's long held precedent that an attorney's knowledge is imputed onto the client. *Overlander*, 129 Kan. at 712. As stated earlier, they contend that their case so closely "parallels" *Canaan*, that we should reach a similar holding, reversing the district court's dismissal of their case based on poor lawyering "per the doctrine of stare decisis."

Yet, the Stouts' argument challenging our Supreme Court precedent about an attorney's knowledge imputing to the attorney's client fails for several reasons. For starters, as just explained, the district court made a credibility determination that the Stouts knew about their November 8, 2022 hearing. Thus, I would accept the district court's fact-finding that the Stouts provided no credible explanation (1) why they had not attended the November 8, 2022 hearing on KanEquip's motion to dismiss and discovery sanctions and (2) why they had not moved for relief from the district court's dismissal of their case against KanEquip with prejudice before March 3, 2023. I would submit that this failing, in and of itself, was evidence enough for the district court to deny the Stouts' motion to set aside its dismissal.

I note that Peter Antosh's email communications with KanEquip's attorney show that the district court did not err. Antosh responded to KanEquip's attorney's email by telling her that he had not worked on the Stouts' case because he hoped that Malone's suspension would be over by the time he had to do anything related to their case. An attorney's admission that he did not work on a client's case because he had hoped that the client's former attorney who had been suspended would return from his suspension before

25

he had to work on that client's case is not excusable neglect. Indeed, why would Antosh believe that the Stouts would have wanted Malone to return as their attorney when they had implicitly accused him in their affidavits that he failed to tell them about the negative things that were occurring in their case? In short, Antosh's hope runs counter to all reason because it is based on an illusory hope. Thus, it cannot be counted as some other reason justifying the district court to alter its decision. Rather, it is inexcusable behavior and definitive proof that the Stouts' motion to set aside the district court's dismissal of their case against KanEquip under K.S.A. 2022 Supp. 60-260(b) was not filed within a reasonable time because of Antosh's tardiness.

Finally, I also note that because the Stouts hired Antosh on November 26, 2022, Antosh had time to appeal the district court's dismissal of the Stouts' remaining claims against KanEquip based on the November 8, 2022 hearing. For example, the order of dismissal was entered on November 9, 2022. Thus, the Stouts had 30 days to timely file an appeal of that dismissal under K.S.A. 2022 Supp. 60-2103(a). So, when the Stouts hired Antosh on November 26, 2022, Antosh still had time to file an appeal of the November 9, 2022 order of dismissal or move the district court to reconsider its dismissal of the Stouts' claims within 28 days as required under K.S.A. 2022 Supp. 60-259. In both of their affidavits, the Stouts state the following:

> "2. Prior to November 9, 2022, I was unaware that my lawsuit was in jeopardy of dismissal due to discovery deficiencies.
> "3. Prior to November 9, 2022, I was unaware that monetary discovery sanctions were owed in my lawsuit.
> . . . .
> "8. Had I been aware of the discovery problems and monetary sanctions, I would have taken steps to address them."

26

But obviously the Stouts were aware of these problems with their lawsuit by November 9, 2022, based on (1) the notices they received from Malone and (2) the voicemail Malone's assistant left with KanEquip's attorney the day before the hearing.

I just wonder why no appeal was taken by them from the November 9, 2022 order of dismissal, especially when the district court judge struck the Stouts' sole expert witness from their case under his November 9, 2022 order of dismissal. Indeed, the district court judge concluded before striking the Stouts' expert witness the following:  "[S]o I don't see much of a distinction between striking Mr. Fleming [the Stouts' expert] and dismissing this case because without their sole expert being allowed to testify, I don't see what case they would actually be able to bring and prove up at the trial." Here, the majority acknowledges, which I agree with, that because the Stouts did not timely appeal the district court's November 9, 2022 order dismissing their case with prejudice, this court lacks jurisdiction to review the November 9, 2022 order of dismissal. So, even if the Stouts were successful in this appeal, it would not change the ultimate outcome of this case because they will no longer have any expert witness to call on to prove their damages in this suit.

Based on the preceding evidence, I would affirm the district court's denial of the Stouts' motion to set aside the prejudicial dismissal of their case against KanEquip under K.S.A. 2022 Supp. 60-260(b)(1) and (b)(6).

*Self-Represented Litigants*

KanEquip points out in its opposition to the Stouts' motion to set aside the district court's order of dismissal an alternative reason why the district court's decision should be affirmed. KanEquip correctly maintains that Malone was suspended from the practice of law on October 14, 2022. Yet, at some point before November 2, 2022, Malone mailed a notice of his suspension to the Stouts on October 27, 2022. For example, Malone filed his

27

notice of withdrawal in the Stouts' case on November 2, 2022. Malone certified that on October 27, 2022, he served his notice of withdrawal by mail on the Stouts. In their affidavits, the Stouts acknowledged that they were aware that Malone had withdrawn from their case on November 2, 2022, due to his disciplinary suspension. Thus, the Stouts became pro se litigants. And as pro se litigants, it would have been their responsibility and obligation to proceed with this case. As KanEquip points out in its response to the Stouts' motion to set aside the order of dismissal, the Stouts could have contacted the district court clerk to obtain information on their case or contacted KanEquip's defense counsel. But they did neither.

In crafting an excuse for the Stouts not contacting the district court clerk or KanEquip's attorney to obtain information about their case, the majority maintains that the "Stouts were not sitting on their hands, they were, reportedly, actively seeking a new attorney to continue their lawsuit." Slip op. at 15. Nevertheless, the majority's excuse here for the Stouts takes this court beyond the parameters for pro se litigants.

Indeed, contrary to the majority's position, pro se litigants are not excused from the requirement to be aware of and follow rules of procedure, including attending scheduled hearings before the court. Any doubt on this point vanishes when you consider our Supreme Court decision in *Guillory v. State*, 285 Kan. 223, 229, 170 P.3d 403 (2007) ("As far as the filing of a timely notice of appeal is concerned, a pro se K.S.A. 60-1507 petitioner is in the same position as all other pro se civil litigants, and is required to be aware of and follow the rules of procedure that apply to all civil litigants, pro se or represented by counsel.").

In this record of appeal, there is positive and affirmative evidence of a notice of hearing, electronically filed on October 5, 2022, in the Stouts' case, scheduling a hearing before the Honorable Andrew Stein on Tuesday, November 8, 2022, at 11 a.m. Central Time. Under Kansas law, this notice of hearing gave the Stouts notice of the November 8

hearing date based on an electronic filing served on Malone. And when Malone was later suspended from the practice of law by our Supreme Court and the Stouts became pro se litigants, this same notice again gave them notice of the November 8, 2022 hearing date.

Based on *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986), this court cannot now reward the Stouts for being pro se and then claiming they did not know about the November 8, 2022 hearing. Indeed, in *Gutierrez*, this court set out the obligation of a pro se litigant:

> "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or see to that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." 11 Kan. App. 2d at 595-96.

This well-known passage provides the standard by which pro se litigants are to be measured under Kansas law. See *Guillory*, 285 Kan. at 229 (citing this precedent with approval); *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022); *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005).

The crux of the Stouts' argument is that as pro se litigants they were unaware that their case had been set for a motions hearing on November 8, 2022. Nevertheless, in Kansas, people who are not lawyers tend to be at a significant disadvantage when they represent themselves. See *University of Kansas Hosp. Authority v. Yang*, No. 108,199, 2013 WL 518112 (Kan. App. 2013) (unpublished opinion). Because this court is bound by *Guillory*, and guided by *In re Estate of Broderick*, *Joritz*, and *Yang*, this court cannot reward the Stouts for being pro se and then claiming that they were unaware of the

November 8, 2022 hearing. Thus, because this argument is not warranted by the law, the majority and the Stouts' unawareness argument topples like a house of cards.

Here, it seems that the majority wants to have it both ways. On one hand, the majority holds that Malone's knowledge about what is going on in the Stouts' case cannot be imputed to them under the *Overlander* rule because of Malone's suspension by our Supreme Court. Nevertheless, the district court judge ruled that "[b]ecause the suspension did not arise until after the [district] [c]ourt ordered sanctions and set the November 8 hearing, the suspension did not contribute to the discovery issues giving rise to the dismissal of this case." Indeed, neither the majority nor the Stouts point to any evidence in the record on appeal that our Supreme Court suspended Malone for anything he did improperly in their case.

On the other hand, the majority holds that the Stouts' responsibility when they became pro se litigants before the November 8, 2022 hearing did not require them to contact the district court clerk or contact KanEquip's attorney to learn about the status of their case. In making such inconsistent arguments, the majority and the Stouts are obviously attempting to have it both ways:  (1) You cannot impute Malone's knowledge about the Stouts' case to them because of Malone's suspension and (2) you cannot hold the Stouts to the measured standards of a pro se litigant because of Malone's suspension. So, the majority's two holdings rest on a legal inconsistency because once the Stouts became pro se litigants, they could no longer continue to be unaware or ignore what was occurring in their case. For this reason, the majority cannot use Malone's suspension to avoid the application of the imputation rule under *Overlander* and then simultaneously use Malone's suspension to avoid the application of the Kansas pro se litigant rule under *Gutierrez.*

To find comfort in the majority's pro se litigant holding would eclipse the requirements for a pro se litigants under Kansas Law. The majority's pro se litigant

30

holding is a result completely at variance with Kansas law. For example, under the majority's holding, pro se litigants would no longer be required to be aware of or follow the rules of procedure that apply to all civil litigants—pro se or represented by counsel. Because this would be out of step with the current Kansas law standards for pro se litigants, the Stouts should have no other alternative but to have their conduct ranged under the previously cited Kansas law standards for pro se litigants. So, I refuse to water down the present Kansas law standards for pro se litigants to the majority's ambiguous and arbitrary constructions of those standards.

Once again, sometimes simply not knowing that something exists is simply not knowing. For example, the fallacy of negative proof is an attempt to sustain a factual proposition merely by negative evidence. In fact, neither the majority nor the Stouts have pointed to any affirmative evidence in the record that the district court wrongly proceeded with the motion for sanctions hearing on November 8, 2022. In sum, neither the fact-findings made by the district court nor Kansas law supports the majority's previously described holdings. As a result, I would affirm the district court's decision.